THE CHRISTIAN GANAHL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 66488. Promulgated March 18, 1936.

*Claude I. Parker, Esq., John B. Milliken, Esq.*, and *Llewellyn A. Luce, Esq.*, for the petitioner.

*Eugene G. Smith, Esq.*, for the respondent.

OPINION.

SEAWELL: This proceeding concerns a deficiency of $9,980.69 in income tax of the petitioner for 1929. The facts were stipulated and briefly stated are as follows:

The petitioner, a California corporation, owned four lots in the city of Los Angeles, two of which, known as lots B and C, fronted on Grand Avenue, and the remaining lots, known as lots D and E, which were adjoining and considered as one lot, had a frontage on Washington Street and adjoined the rear of lots B and C.

In 1926, pursuant to ordinances adopted by it, the city of Los Angeles instituted court proceedings under the "Street Opening Act of 1903," California Statutes, 1903, p. 376, to condemn a strip 79.86 feet wide, on the east side of lot D and the west side of lot E, including improvements thereon, as part of a street extension project. In 1927 the court rendered an interlocutory judgment in which it awarded damages to the petitioner in the amount of $206,280.13, of which $148,864.54 was for land, $32,663 for buildings, and $24,752.59 for severance damages. As part of the condemnation proceedings and under authority of the same state statute, the city of Los Angeles levied assessments totaling $75,413.93 against the four lots, as follows:

| | |
|---|---:|
| Lot D | $10, 149. 30 |
| Lot E | 41, 075. 62 |
| Lots B and C | 24, 189. 01 |
| | 75, 413. 93 |

The assessments were made entirely for the payment of the property condemned and became a lien upon the petitioner's property. The petitioner satisfied the assessments in 1928 by giving the city of Los Angeles receipts for payments on the awards equal to the amount of the assessments. In January 1929 the petitioner received the remainder of $130,866.20 of the awards from the city of Los Angeles.

In its income tax return for 1929 the petitioner reported taxable gain of $31,147.99 from the condemnation by deducting from the net award of $130,866.20 (gross awards, less special assessments) a basis of $88,318.21 for the land and $11,400 for the buildings. In his determination of the deficiency the respondent increased the gain to $127,823.24. He reached the amount by deducting from the awards, aggregating $181,527.54 for the land and buildings, a basis of $53,704.30, $42,304.30 for the land and $11,400 for the buildings.

The parties are agreed that both used an erroneous cost basis for the land. It is stipulated that the correct combined cost basis of lots D and E is $118,767.86, of which 51.1923 percent, or $60,800,

is the basis of the portion taken. The buildings condemned had a cost basis of $11,400.

The tax of $4,295.93 shown to be due in the petitioner's return for 1929 was paid within three years prior to the filing of the petition with the Board.

On brief the parties insist that their respective methods for determining the taxable gain, with an adjustment for the correct cost basis of the land, are correct. None of the cases decided by this Board or the courts appear to approve the computation used by the petitioner. The method employed by the respondent is in accordance with his rulings, which have been indirectly approved by this Board. I. T. 2599, X–2 C. B. 170; G. C. M. 12632, XIII–1 C. B. 104; G. C. M. 12657, XIII–1 C. B. 80; *L. H. Wolf*, 29 B. T. A. 702.

The methods proposed by the respective parties and the results they produce are shown in the following tabulation:

| | Petitioner | | Commissioner | |
| --- | --- | --- | --- | --- |
| | Portion condemned | Portion remaining | Portion condemned | Portion remaining |
| Awards: | | | | |
| Land | $148,864.54 | ----------- | $148,864.54 | ----------- |
| Buildings | 32,663.00 | ----------- | 32,663.00 | ----------- |
| Severance damages | 24,752.59 | ----------- | ----------- | $24,752.59 |
| | 206,280.13 | ----------- | 181,527.54 | 24,752.59 |
| Special assessments: | | | | |
| Lot D ----- $10,149.30 | | | | 10,149.30 |
| Lot E ----- 41,075.62 | | | | 41,075.62 |
| Lots B & C ----- 1 24,189.01 | | 75,413.93 | | |
| | 130,866.20 | | | |
| Basis of property condemned: | | | | |
| Land ----- $60,800.00 | | $57,967.86 | | 57,967.86 |
| Buildings ----- 11,400.00 | 72,200.00 | | 72,200.00 | |
| Gain | 58,666.20 | ----------- | 109,327.54 | |
| | | | | 109,192.78 |
| Severance damages | ----------- | ----------- | ----------- | 24,752.59 |
| New basis | | 57,967.86 | | 84,440.19 |

1 Commissioner added to basis of lots B and C.

It will be observed that under the petitioner's computation the special assessments levied against all of its property in the assessment district is recovered by deducting it from the awards. The same result would have been reached by adding the amount to the cost of the land taken. It also treats the severance damages as an amount realized from a disposition of the property condemned. The respondent does not take into the reckoning the special assessments or the severance damages. He regards the former as an additional investment in the land remaining and the latter as a partial recovery of the basis of the portion of lots D and E not condemned.

It has been held that, where special assessments are offset against an award for land taken under condemnation proceedings, the whole award should be regarded as having been received by the property owner. *Carrano* v. *Commissioner*, 70 Fed. (2d) 319, reversing a memorandum opinion of this Board on other grounds. A like conclusion was reached by us in *Washington Market Co.*, 25 B. T. A. 576, where money was withheld to satisfy bonds, taxes, and other liens against the property.

Special assessments of the kind involved here are levied against property in a district upon the theory that the property charged is enhanced in value, "the enhancement of value being the consideration for the charge, * * *." *Illinois Central Railroad Co.* v. *Decatur*, 147 U. S. 190. Assessments of this nature are not deductible from gross income. Sec. 23 (c) (3), Revenue Act of 1928; *Caldwell Milling Co.*, 3 B. T. A. 1232; *Carrano* v. *Commissioner*, *supra*. They constitute an additional investment in the property assessed. *Champion Coated Paper Co.*, 10 B. T. A. 433. See *F. M. Hubbell Son & Co.*, 19 B. T. A. 612; affd., 61 Fed. (2d) 644; certiorari denied, 284 U. S. 664. The regulations promulgated under acts prior to the 1928 Act classified assessments for local benefits as "in the nature of capital expenditures." Art. 133, Regulations 45, 62, 65, and 69. Regulations 74, covering the 1928 Act, omit the classification. Art 153.

In the *Carrano* case, *supra*, there was an award for severance damages, but the record did not disclose the amount thereof. No figures were available from which the basis for the whole tract could be apportioned between the part taken and the part remaining. The special assessment levied against the remaining part of the parcel condemned was offset against the awards, as here, and the difference was paid to the landowner. The court regarded the special assessment as having been paid before the awards, and computed the gain by deducting the original basis for the whole parcel, increased by the amount of the special assessment, from the awards, including the one made for severance damages. This left no basis for the remaining portion of the lot, with the result that if the property were ever sold, the entire selling price would represent taxable gain. Under the prevailing facts no other course was open to the court.

In *L. H. Wolf*, *supra*, awards were made for improvements, land taken, and severance damages to the remaining parcel. A special assessment was levied against the portion of the lot not taken. The evidence did not disclose whether Wolf had other property in the assessment district. No gain was realized from the disposition of the improvements. The Commissioner computed the gain on the part taken by the same method he used here, namely, by deducting from the award for the land taken the cost of such portion plus

attorneys' fees incurred in the transaction. The question submitted to the Board was the narrow one of whether or not there was a closed transaction. On appeal the Circuit Court of Appeals held that "it is clear that the entire proceeding for the opening of a street is one proceeding and the result should be treated as an entirety." 77 Fed. (2d) 455. The special assessment made against the portion of the parcel not taken exceeded the awards by $831.60, which the landowner paid the city, and consequently there was no taxable gain under the court's decision.

Several obstacles stand in the way of accepting the petitioner's method of computing the profit. It completely ignores the rule that the whole of the amount awarded for property seized under condemnation proceedings is to be considered as received even though a lesser amount is actually received because of an offset for an assessment levied to pay the cost of the property condemned. The just compensation which the petitioner was entitled to receive under the eminent domain proceedings was the value of the land and improvements taken, plus damage to the land not taken. *City of Los Angeles* v. *Oliver*, 102 Cal. App. 299; 283 Pac. 298. The amount thus established is entered as a judgment in favor of the property owner. Secs. 12 and 31, Street Opening Act, 1903. The property owner may pay any special assessment levied against his land by offsetting it against the award. Such a procedure, however, does not reduce the amount of the award; it merely operates to satisfy the assessment and reduce a liability of the city. Sec. 21.

While not contesting the receipt of benefits equal in value to the amount of the assessments, the petitioner determines the gain without regard to enhancement of value of the property assessed. In the absence of any evidence on the point we are justified in assuming that the petitioner received a consideration for the assessments equal in value to the amount of the charges. The computation also treats the severance damages as recovery for the land taken. Such award has no direct relation to the one made for the portion of the lot taken. It constitutes damages sustained by reason of the taking of another part of the lot, for which just compensation was allowed. Inclusion of the severance damages in the reckoning increases the gain and indirectly results in a tax on property not disposed of.

The parties are in agreement that only the basis for the land actually taken should be recovered. With this we agree. We have frequently held that where a large tract is acquired to divide into lots and is subsequently divided, the basis for the land should be allocated to the several parcels on an equitable basis. *J. S. Cullinan*, 5 B. T. A. 996; *Thomas J. Avery*, 11 B. T. A. 958; *D. C. Clarke*, 22 B. T. A. 314. See *Biscayne Bay Islands Co.*, 23 B. T. A. 731;

*Searles Real Estate Trust*, 25 B. T. A. 1115. The rule is applicable even though the tract was not acquired for division into lots. *Frederika Skinner*, 20 B. T. A. 491. Regulations and rulings of the Commissioner are in accordance with decisions of this Board. Art. 43, Regulations 45, 62, 65, 69; art. 61, Regulations 74; O. D. 1072, 5 C. B. 89. We think the rule is applicable when a parcel, as here, is involuntarily divided.

The case of *Carrano* v. *Commissioner*, *supra*, suggests that, in a case having the facts from which to do it, it might be necessary in order to reach a proper result to apportion the special assessment to the part taken and the part remaining. To increase the cost basis of the portion of lots D and E condemned by some part of the assessments made against the remaining portion would be contrary to the theory of such charges. Here, as we understand the stipulation, there was a disposition of fee simple title, as distinguished from an easement or right of way. The statute under which the assessments were made provides that after the entry of an interlocutory judgment fixing the amounts of the awards, the street superintendent "shall proceed to assess the total expense of the proposed improvement * * * upon and against the lands, including the property of any railroad or street railroad, within said assessment district, except the land to be taken for such improvement, in proportion to the benefits to be derived from said improvement." Obviously, under the statute there could be no assessment against the whole of the original lot, since the city had taken a part of it for public use. The lien given the city for the amount of the assessments did not attach to the entire tract but only so much thereof as remained in the hands of the petitioner. The petitioner paid the charges to free from a lien the parts of the lots remaining. No part of the assessments may be considered as an additional investment in the property condemned.

The respondent's method of computing the gain is approved and will be followed in this proceeding. In his computation of the gain the respondent made an allowance of $5,941.68 for expenditures to replace the buildings condemned. A like allowance will be reflected in the recomputation to be made under Rule 50.

The petitioner contends that the portion of the award used to pay the assessments of $75,413.93 was expended in the acquisition of property similar or related in service and use to the property taken and no gain should be recognized to that extent.

Section 112 (f) of the Revenue Act of 1928 provides, in part:

If property (as a result of * * * an exercise of the power of requisition or condemnation, * * *) is compulsorily or involuntarily converted into property similar or related in service or use to the property so converted, or

into money which is forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, expended in the acquisition of other property similar or related in service or use to the property so converted, * * * no gain or loss shall be recognized.

Here the property was involuntarily converted into money by condemnation proceedings and the second clause of the section governs the question. *Washington Market Co., supra; John J. Bliss,* 27 B. T. A. 803; *Bandes* v. *Commissioner,* 69 Fed. (2d) 812, affirming 28 B. T. A. 99; certiorari denied, 293 U. S. 568. The clause provides in clear language that it is to apply only when there is an expenditure of all or a portion of the proceeds in acquiring other property. It contemplates the acquisition of property to replace, or as a substitution for, the property converted into money by condemnation. *John J. Bliss, supra; Wilmore Steamship Co.,* 30 B. T. A. 866; reversed on other grounds, 78 Fed. (2d) 667; *Bandes* v. *Commissioner, supra.* Offsetting the benefit assessments against the award did not result in the acquisition of any new property—it merely discharged an existing lien on property already owned. The claim is denied. See *L. H. Wolf, supra.*

The petitioner also contends that the gain derived from the proceedings was taxable in 1927, and if not in that year, the sum of $75,413.93, an amount equal to the benefit assessments offset against the awards, was taxable in 1928. The respondent argues that no such issues are raised by the pleadings. With this we agree.

The petitioner relies upon its allegation in the petition that "In determining the net income for the year 1929, the Commissioner erroneously included in the computation of said net income the sum of $75,413.93, which said sum did not represent net income and should not be included in the computation thereof" as raising the questions. The facts alleged as a basis for the error complained of are confined to the ownership of lots D and E; the condemnation of a part thereof; the awards and special assessments made respecting petitioner's property; and that "The offset to the award of $75,413.93 was not an assessment for improvements * * * to defray the cost of actual improvements, such as sidewalks, curbs, * * * , but was a sum arbitrarily assessed against petitioner to defray the cost of the condemned property taken by the City."

We see nothing in the allegation of error relied upon directly or indirectly raising the issue of whether the whole or any part of the award is taxable in a year other than the taxable year 1929. The allegation seems to raise the question of whether any actual benefit resulted from the assessments.

"Always a taxpayer is entitled to know with fair certainty the basis of the claim against him. Stipulations concerning facts and any other evidence properly are accommodated to issues adequately

raised." *General Utilities & Operating Co.* v. *Helvering*, 296 U. S. 200. The rule applies with equal force to the Commissioner. - Being of the opinion that the questions have not been properly raised, we need not enter into a discussion of the grounds relied upon by the petitioner to support its claims.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

MATTHEWS, LEECH, and ARNOLD dissent.