CENTRAL & PACIFIC IMPROVEMENT CORPORATION, PETITIONER, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 68317.  Promulgated March 25, 1936.

*Herschel B. Green, Esq.*, for the petitioner.
*I. Graff, Esq.*, for the respondent.

OPINION.

SEAWELL: The decision entered herein was vacated after a review by the Board of the division report promulgated October 29, 1935, 33 B. T. A. 300. The facts are as follows:

The petitioner is a corporation organized under the laws of the State of California and has its principal place of business at 123 West Washington Boulevard, Los Angeles, California.

During the month of November 1913 petitioner, at a cost of $282,497.72, acquired fee title to a certain parcel of real estate in Los Angeles, California, which is bounded on the north by Eighteenth Street, on the west by Hill Street, on the south by Washington Boulevard, and on the east by an alley, the lot being 484.01 feet on the north, 349.35 feet on the west, 486.60 feet on the south, and 321.59 feet on the east, less a corner on the southwest corner of Hill Street and Washington Boulevard, being 120 feet on Hill Street and 150 feet on Washington Boulevard.

During the year 1930 the city of Los Angeles by proper legal proceedings opened up Broadway Street, a public thoroughfare, and condemned a right of way through said lot owned by the petitioner running from Eighteenth Street to Washington Boulevard, the strip condemned being 88.07 feet in width on Eighteenth Street and 88.42 feet in width on Washington Boulevard. In the same year the city of Los Angeles by proper legal proceedings also condemned a portion of said lot in so far as the lot extended along Washington Boulevard to the extent of 20 feet in depth along the entire side of the lot. A special improvement district was created, and the con-

demnation and improvements hereinafter mentioned were part of its work.

In the year 1930 the city of Los Angeles, by order of court, awarded petitioner for the land taken from it in the condemnation proceeding the sum of $203,271.88. Petitioner received out of the award only $34,321.86 in cash and the balance was applied as a credit on the assessments hereinafter referred to. The cost to the petitioner of the land taken in the condemnation proceeding was $72,357.29.

In the year 1930 the city of Los Angeles levied special assessments against petitioner on the remaining land owned by it in the above described parcel for the work of opening, widening, paving, and lighting in said improvement district in the sum of $155,164.28.

In the year 1931 the city of Los Angeles levied special assessments against petitioner on the remaining land owned by it in the above described parcel for the work of opening, widening, paving, and lighting in said improvement district in the sum of $8,057.30, which sum was paid by petitioner in the year 1931.

In the year 1930 the city of Los Angeles levied a special assessment against other property owned by the petitioner in said improvement district for the work of opening, widening, paving, and lighting in the district in the sum of $13,785.74. No part of the property with respect to which the assessment of $13,785.74 was levied was taken by the city of Los Angeles nor was any award made with respect thereto.

In 1930 the special assessments mentioned aggregating $168,950.02 were paid by the city of Los Angeles withholding that sum from the award of $203,271.88.

Petitioner did not sell, exchange, or otherwise dispose of the above described property in 1930, except as stated above.

The petitioner had the right either to collect its awards in full and permit the special assessments to go to bond payable over a period of years, or to apply the awards against the special assessments and receive the balance due. It chose the latter method.

The improvement district here concerned was very extensive. There were a great many property owners in the improvement district who had no property taken, but were required to pay special assessments.

In determining the deficiency here in question the respondent treated the entire award as income and computed the taxable gain by deducting therefrom the amount of $72,357.29 as the cost of the property taken.

The petitioner contends that, since the assessments were offset against the awards, the only income received by him in 1930 from

the transaction was $34,321.86, which was further reduced by $8,057.30, the special assessment levied in 1931, and, as a consequence, all of the proceeds of the property involuntarily converted was expended in the acquisition of other property similar or related in service or use except $26,264.55, which is less than the cost of the property taken.

The question is how the gain, if any, should be computed. In his determination of the deficiency the respondent taxed the petitioner on a gain of $130,914.59, a figure he reached by deducting the stipulated cost basis of the land condemned from the amount of the awards made therefor. The petitioner argues, among other things to be mentioned, that it realized no taxable gain from the proceedings since its basis for the land taken, plus the assessments levied in 1930, exceeded the amount of the awards, and the cash of $34,321.86 received from the city was less than the cost of the land condemned.

We had the same question in *Christian Ganahl Co.*, 34 B. T. A. 126. In that proceeding there was an award for land condemned by the city of Los Angeles and special assessments were levied against remaining portions of the lot, together with other real property of the taxpayer in the special assessment district. Our holding was that the gross amount of the awards constituted income to the taxpayer and that its taxable gain was the difference between such amount and the basis for the land condemned. Following that ruling, we hold that petitioner realized taxable gain of $130,914.59 from the condemnation proceedings, as determined by the respondent.

The petitioner also contends that it gave up rights in a portion of its property and received therefor an interest in a thoroughfare and accordingly the whole of the awards, or such amounts less the assessments levied in 1930 and 1931, were expended in the acquisition of other property similar or related in service or use within the meaning of section 112 (f) of the Revenue Act of 1928. There is no merit to the contention. *L. H. Wolf*, 29 B. T. A. 702; reversed on other grounds, 77 Fed. (2d) 455; *Christian Ganahl Co., supra.*

The report promulgated herein on October 29, 1935, is accordingly vacated.

Reviewed by the Board.

*Decision will be entered for the respondent.*

---

ARNOLD, dissenting: The majority opinion taxes petitioner with $130,914.59 as income for 1930. This represents the difference between the entire award and the original cost basis of the portion taken. The difference between the award for the land taken and the

assessment levied against the remaining portion was less than the cost basis of the land taken.

To treat the assessment as added to the cost basis of the part remaining for future determination of gain or loss and the award, including that portion which paid the assessment, as taxable income in 1930 is, in my opinion, unwarranted and results in improperly taxing unrealized income. We are dealing here with a single tract of land over which an easement or right of way was acquired by the city of Los Angeles through the right of eminent domain.

We should not lose sight of the fact that petitioner was involuntarily divested of a part of the property. It was not a voluntary sale. While the assessment was levied against the part remaining it grew out of the award for the part taken and both the assessment and the award were inseparably merged into petitioner's investment. To the extent the assessment was offset against the award, the receipt of the award and the payment of the assessment was one transaction, inseparable and indivisible, in fact simultaneous. Neither preceded the other in point of time and neither was separate and distinct from the other.

The Board has previously on two occasions held on a similar state of facts in line with the majority opinion here. Both cases were appealed to the Circuit Court of Appeals, one to the Second Circuit and one to the Ninth Circuit, and in both cases the Board was reversed. In one of these cases, *Carrano* v. *Commissioner*, 70 Fed. (2d) 319, the Second Circuit held that where a municipality paid the award by withholding the assessment from the award, the amount of the assessment should be immediately added to the original cost basis of the entire property and be treated as part of the original cost and the award applied in reduction of the cost basis in determining the gain or loss. Justice L. Hand, in that case, said:

* * * On the other hand, it appears to us that this payment should be treated as immediately added to the original "basis." Although the assessment was not an added cost until paid, it became cost at the moment when it was set off against the award. Receipt and payment were simultaneous; it is as false to say that the award was paid before it was expended, as that it was expended before it was paid.

\*     \*     \*     \*     \*     \*     \*

In this instance the "gain" in dispute could arise only on the hypothesis that so much of the award as paid the assessment was received before the assessment itself was paid. This was demonstrably not the case; it was received at the same time. Thus it does not affirmatively appear to be taxable "gain" at all, and the taxpayer wins. Moreover, this is the direct and natural way to look at the transaction. The taxpayer has "gained" only what he has received above his cost; so far as his award has been cancelled by the assessment, it is not a "gain" at all, it is instantly absorbed by a new cost which arises and is paid without allowing him even a momentary possession of the "gain."

The other case referred to is *Wolf* v. *Commissioner*, 77 Fed. (2d) 455, cited with approval in the majority opinion as authority on another point. The Ninth Circuit refused to approve the Board's conclusion on a similar state of facts, saying:

\* \* \* However that may be, it is clear that the entire proceeding for the opening of a street is one proceeding and the result should be treated as an entirety. This was the view of the Supreme Court of California expressed in considering a somewhat similar situation under the same street opening act in the case of *Spring Street* v. *City of Los Angeles*, 170 Cal. 24, wherein a parcel of land was awarded $20,000 and assessed $20,115.20 to pay for the property thus taken. This transaction was treated as a unit for the purpose of determining whether or not there had been an infringement of the constitutional rights of the owner of the land. \* \* \*

The Board, in the recent case of *Christian Ganahl Co.*, 34 B. T. A. 126, on which the majority opinion was based, adhered to its former decisions in the cases of *Carrano* v. *Commissioner*, *supra* and *Wolf* v. *Commissioner*, *supra*.

In my opinion the fairest and most equitable way to handle a situation of this kind is to add the assessment to the original cost basis of the entire tract, and apply the award in reduction of this new cost basis. The result of this will be fair to the Government and the taxpayer. The underlying purposes of the taxation of income is to tax realized gain rather than unrealized gain. Cf. *Eisner* v. *Macomber*, 252 U. S. 189; *Safe Deposit & Trust Co.* v. *Miles*, 259 U. S. 247. The Board decisions above referred to tax as realized gain that which is not a realized gain. The court, in the *Carrano* and *Wolf* cases above referred to, by merging the assessment and the award in a readjusted new cost basis, recognizes this underlying principle of income taxation, and in my opinion should be followed in cases like the one here. No income escapes taxation. The Government will get the tax on the gain when it is definitely determined; the taxpayer will not pay on a theoretical gain but will pay on the gain actually realized. For this reason, I respectfully dissent.

MATTHEWS and LEECH agree with this dissent.