PIONEER REAL ESTATE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 105267.   Promulgated October 13, 1942.

*Cedric A. Major, Esq.*, for the petitioner.
*James C. Maddox, Esq.*, for the respondent.

## OPINION.

ARUNDELL: The principal issue is whether the entire award of $340,-572.50, received by petitioner as compensation for the land taken and as consequential damages to the remaining land and building, is taxable gain to the extent that it exceeds the cost of the land taken ($21,-674.42) plus the expenses of the condemnation proceeding ($11,646.03). Respondent, in accordance with G. C. M. 20322, 1938-2 C. B. 167,[1] determined the issue in the affirmative and held that a profit of $307,-252.05 was realized upon the condemnation award.

Petitioner, however, contends that the award was in substance two distinct awards for separate purposes. The first was the sum of $28,254.57 paid as compensation for the land actually taken, and petitioner concedes that it realized a taxable gain to the extent that

---

[1] "After careful consideration, this office is of the opinion that the various steps incident to a street opening or similar improvement project, including the condemnation award for property taken, the award for severance damages to and a special benefit assessment levied against the remaining portion of the plot or parcel of real estate affected, constitute a single proceeding, the results of which are to be calculated as an entirety for Federal income tax purposes."

this amount exceeded the basis of the property so taken. The second was the amount of $312,317.93 paid to compensate petitioner for the damage to the remaining land and building which was occasioned by the condemnation. Petitioner maintains that the latter amount was paid not for the property taken but to reimburse it for damage to the remaining assets.

It concludes, therefore, that this sum should not be included in the profit resulting from disposition of the strip of land, but should be applied against and reduce the bases of the remaining property.

We agree with petitioner. There is no issue here as to the allocation of the award between compensation for the land taken and severance damages to the remaining property. See *Seaside Improvement Co.* v. *Commissioner*, 105 Fed. (2d) 990; certiorari denied, 308 U. S. 618; *Langley Collyer*, 38 B. T. A. 106. The facts show that damages were actually sustained and that the court, in making the award, stated separately the amount that was to serve each purpose. While the compensation payable to petitioner was included as a unit with that payable to Lehigh, the parties here have stipulated the amount of petitioner's share and the extent to which that figure represented a recovery for the land taken, on one hand, and for severance damages to the remaining property, on the other. Respondent does not contend, nor indeed could he under the facts as stipulated, that severance damages were not specially awarded or that petitioner did not sustain such damages. Under these circumstances to hold, as does respondent, that petitioner received $340,000 as payment for a strip of land costing only $21,000, is contrary to the facts. Petitioner's computation seems to us sound and logical, and should be adopted here unless there are persuasive considerations in the decided cases requiring a different conclusion.

Respondent's method of computing gain or loss under similar circumstances was formerly in accord with that urged upon us here by petitioner.[2] He argues, however, that he was led to abandon this position and to assume the one he now maintains because of three adverse decisions of the Ninth Circuit Court of Appeals, this Board having subsequently adopted the view expressed by that court. The decisions upon which this argument rests are *Wolf* v. *Commissioner*, 77 Fed. (2d) 455, reversing 29 B. T. A. 702; *Christian Ganahl Co.* v. *Commissioner*, 91 Fed. (2d) 343; certiorari denied, 302 U. S. 748,

[2] In I. T. 2599, C. B. X–2, p. 170, it was held:

"* * * The award being separable, this office is of the opinion that gain or loss will result from that portion of each award which represents the amount paid for the acquisition of land. No taxable gain is recognized, however, with respect to that portion of the award which represents the severance damages, but the amount thereof should be deducted from the basis to be used in determining gain or loss upon the subsequent disposition of the remaining portion of the property, unless the amount of the severance damages exceeds the cost or other basis of the remaining portion of the property, in which case such excess is taxable gain."

reversing 34 B. T. A. 126; *Central & Pacific Improvement Corporation* v. *Commissioner*, 92 Fed. (2d) 88, reversing 34 B. T. A. 208; *Calvin C. Green*, 37 B. T. A. 25; *Jamieson Associates, Inc.*, 37 B. T. A. 92; affirmed in part and reversed in part *sub nom Seaside Improvement Co.* v. *Commissioner, supra; Palladium Amusement Co.*, 37 B. T. A. 149; *Income Syndicate, Inc.*, 37 B. T. A. 926; and *Langley Collyer, supra.*

In each of these cases the principal issue presented was what effect should be given to a special benefit assessment levied in a condemnation proceeding against the remaining property of the condemnee. In most instances the assessment had been deducted from the amount of the award, so that the taxpayer had in fact received only the net award. The Commissioner took the position, G. C. M. 12632, C. B. XIII-1, p. 104, and the Board upheld him, that gain or loss on the property actually taken was to be computed separately, and equaled the difference between the award for and the cost of the property taken; and that the basis of the remaining property was either reduced or increased by deducting therefrom the severance damages awarded and adding thereto the special assessment levied. There was thought to be justification for this view in that the assessment was levied only upon the property remaining after the condemnation and therefore should have no bearing upon the computation of gain or loss in connection with the property taken.

The first case to be presented to the Ninth Circuit, *Wolf* v. *Commissioner, supra*, was unusual in that the amount of the assessment was approximately $900 in excess of the awards both for the property taken and for severance damages. The court was unwilling to tax the condemnee on the difference between the cost of the property taken and the award which he had only constructively received by having it set off against his liability on the assessment. To reach this conclusion the court held that the entire proceeding to open a street is one proceeding and the result should be treated as an entirety. It stated that "the petitioner was paid nothing whatever for the land taken, and in addition he was required to pay $891.60, which was the net result of the entire transaction so far as he was concerned. The gain, if any, derived by the taxpayer from the transaction was in the increased value of the property already owned by him. This increase is not a taxable gain." The separate question of how to treat the severance damages was not considered in this case, for the assessment exceeded the total award.

The same issue was before the court in the *Christian Ganahl Co.* case, where, although the benefit assessment did not exceed the total award, it did exceed the amount of severance damages allowed. The court thought, however, that the case was indistinguishable in principle from the *Wolf* case. In *Central & Pacific Improvement Corpora-*

*tion* v. *Commissioner*, *supra*, so far as appears no severance damages were awarded, but since the basis of the property taken plus the benefit assessment exceeded the amount of the award, the court held that the taxpayer had derived no taxable gain from the condemnation. In *Calvin C. Green*, *supra*, a case in which no briefs were filed inasmuch as the parties agreed that the rulings of the Ninth Circuit were governing, the Board stated that the proper method of computing the tax was "to include all of the amounts received and to deduct from the total, the assessments paid plus the basis of the property condemned. The basis for the remaining property remains the same and is neither reduced by the amount of the severance damages nor increased by the amount of the assessments." In subsequent Board decisions, *Jamieson Associates, Inc.*, *Palladium Amusement Co.*, *Income Syndicate, Inc.*, and *Langley Collyer*, all *supra*, there was no showing that severance damages had been awarded, and the Board decided in each instance, as the only issue before it, that in computing gain on the condemnation the award should first be reduced by the assessment deducted from it, on the theory that the condemnation proceedings must be regarded as an entirety.

Thus it appears that the cases cited by respondent dealt primarily with a problem that is not involved here, namely, the tax treatment to be given benefit assessments in connection with condemnations. The rule there stated, that condemnation proceedings are to be regarded as an entirety, resulted from a refusal to tax the property owner upon an amount which he had not received but which, by reason of the simultaneous assessment, merely represented an increase in the value of the remaining property. Respondent places particular emphasis upon the language quoted above from the Board's opinion in the *Green* case, but that statement is not to be divorced from the facts which were then before the Board. In that case, while severance damages had been awarded, an assessment greater in amount had been levied, and under the controlling rule the assessment was to be deducted from the award. Consistency, perhaps, requires that, if the assessment is to be deducted from the award, it should be deducted from the total award, including that for severance damages.

In the instant case petitioner actually received the amount awarded for the land taken and concedes that it is to be taxed upon the gain therefrom. We can perceive no valid reason for treating the additional award for severance damages as something other than what it actually was. In any case in which there is no assessment, or perhaps even where an assessment is made if it is less in amount than the severance damages awarded, the problem dealt with in the cited cases does not arise. Under such circumstances the condemnee receives in cash the full amount of the award for the property taken

.and .gain or loss thereon may properly be computed by applying against it the basis of the property condemned; and the severance .or consequential damages or so much thereof as remain after deducting the special assessment if one is made, may fairly and logically .be applied against and reduce the basis of the remaining property, which, in the final analysis, is the property affected both by the assessment and by the severance damages.

Respondent further contends that in any event the consequential damages should be taxed on the ground that they were paid to reim-,burse petitioner for future loss of rentals from its warehouse. The cases of *Hort* v. *Commissioner*, 313 U. S. 28, and *Acme Land & Fur Co.*, 31 B. T. A. 582; affd., 84 Fed. (2d) 441, are cited in this connection. We think there is no merit in the contention and that there is no analogy between this case and those cited. The *Hort* case held that the amount received for cancellation of a lease was a sub-stitute for the future rent reserved therein, and, since the rent would have been included in gross income when received, the substitute payment was to be similarly treated. In the *Acme* case it was held that an amount received to compensate the taxpayer for damage caused by a flood to its wild animal life was not exempt from tax as a gift or constitutionally immune because received from a state or its political subdivision. The Board took pains to point out that there was no impairment of the taxpayer's capital, since its lands were still worth more than their cost. In the present case the severance damages were paid in recognition of the injury sustained by petitioner's remaining properties. These were capital assets in which petitioner had a capital investment. "Recovery for injury to capital 'is never income, no matter when collected'. *U. S.* v. *Safety Car Heating & Lighting Co.*, 297 U. S. 88, 98, * * *." *H. Liebes & Co.* v. *Commissioner*, 90 Fed. (2d) 932, 935. The fact that the extent of the capital injury is measured in part by an anticipated decrease in future rentals makes the recovery no less a return of capital. *Farmers' & Merchants' Bank of Catlettsburg, Kentucky* v. *Commissioner*, 59 Fed. (2d) 912. We conclude, therefore, that petitioner is entitled to apply the severance damages against the bases of its remaining land and building.

The second question is whether the portion of the award denominated interest is taxable as ordinary income or constitutes part of the award. Respondent recognizes that the Second Circuit Court of Appeals has adopted the latter view and has been followed in this respect by the Board. *Seaside Improvement Co.* v. *Commissioner*, *supra; Commissioner* v. *Estate of Appleby*, 123 Fed. (2d) 700, affirming 41 B. T. A. 18; *Edith Henry Barbour*, 44 B. T. A. 1117 (appeal ,pending, C. C. A., 6th Cir.). Notwithstanding the decision to the

contrary by the Third Circuit in *Commissioner* v. *Kieselbach*, 127 Fed. (2d) 359, we adhered to our former position in *David S. Brown*, 47 B. T. A. 139, and we continue to do so. Petitioner is therefore sustained on this issue.

It is stipulated that the amount of the so-called interest is to be allocated among the awards for the land taken, the land retained, and the warehouse, in accordance with figures set forth in the stipulation. Petitioner concedes on brief that a similar allocation should be made with respect to the expenses of the condemnation proceedings. These adjustments, together with those required by petitioner's abandonment of two issues raised by the pleadings, may be given effect in the recomputation under Rule 50.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

----

DISNEY, dissenting: I can not agree with the conclusion reached by the majority opinion on the second point, that is, holding that interest upon a condemnation award is not ordinary income. In my opinion, since in the condemnation proceeding the property is taken and valued as of a certain date, the amount ultimately paid above the award proper, that is, the value of the land taken or other damages, is compensation for the delay in the payment of the award, that is, compensation for the use of money, which is the essential definition of interest. Had the award been paid at the same time as the taking of the property, or the ascertainment of the amount of damages, no additional sums would have been required to pay the obligation of the government or municipality condemning the property. The effect is that the taxpayer's money is being detained and used by the condemnor and, although in a very general sense the whole amount paid is "just compensation" to the condemnee, in a more accurate and particular sense only the amount of the award, for property or damages, is compensation for such property or damages, and, in my opinion, in the matter of income taxes we should view the situation in the more particular meaning of the term "compensation." The "interest" is paid for delay in payment only. As I view the question, *Commissioner* v. *Kieselbach*, 127 Fed. (2d) 359, states the better rule on this question, when it holds that interest is ordinary income. I therefore respectfully dissent.